IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JAMES STANTON VAUGHN )
)
v. ) No. 2:13-0026
) Judge Nixon/Bryant
SOCIAL SECURITY ADMINISTRATION )

To: The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's applications for disability insurance benefits and supplemental security income, as provided under Titles II and XVI of the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 14), to which defendant has responded (Docket Entry No. 16). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 12),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

### I. Introduction

Plaintiff filed his applications for benefits on May 18, 2006, alleging disability onset as of December 18, 2005. (Tr. 400) His applications were denied at the initial and

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of his case by an Administrative Law Judge (ALJ). The case came to be heard by the ALJ on July 28, 2008, when plaintiff appeared with counsel and gave testimony. (Tr. 19-34) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until October 1, 2008, when she issued a written decision finding plaintiff not disabled. (Tr. 8-16) That decision was appealed first to the agency's Appeals Council, and then to this Court. Upon the government's motion for reversal and remand, this Court remanded the matter for further administrative proceedings. Following the Appeals Council's remand with instructions to the ALJ, a second hearing was held on the instant applications for benefits. That hearing was held on February 23, 2012, and plaintiff appeared with counsel and gave testimony. (Tr. 421-36) Following the hearing, the ALJ issued her second decision in plaintiff's case, on June 8, 2012. (Tr. 400-413) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since December 18, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease; poly-substance abuse disorder; chronic obstructive pulmonary disease; depressive disorder and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform *light work* as defined

in 20 CFR 404.1567(b) and 416.967(b) except the claimant can perform simple and low detailed work. He can interact with coworkers and supervisors, but he can interact less than frequently with the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 8, 1965 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 18, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 403, 405-06, 411-12)

On February 25, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 386-90), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The evidence of record in this case has been summarized in two ALJ decisions (Tr. 12-14, 406-08), and in plaintiff's brief (Docket Entry No. 15 at 3-9). The most recent ALJ summary is set forth below:

> The claimant testified at the hearing. The claimant alleges disability primarily on back pain and depression. He has suffered back pain since he was in 7th grade. He suffered injuries in a car wreck in 1999. He has undergone back surgery with limited success. He has memory problems. He lives in a room in a motel owned by his mother.
>
> * * *
>
> Regarding chronic obstructive pulmonary disease, the claimant has been a smoker for many years. He has received a diagnosis of chronic obstructive pulmonary disease. At some exams, he has coarse breathing, but no rales or wheezing. He has been prescribed an inhaler, but he does not use it regularly. The residual functional capacity accommodates this impairment.
>
> In terms of the claimant's alleged degenerative disc disease, the claimant has suffered back pain since childhood. Additionally, the claimant was involved in a serious motor vehicle accident on January 29, 1999, which caused multiple injuries. He was discharged on February 4, 1999. The following month he entered hospital care for detoxification, reporting a history of Tylox and cocaine abuse. He was treated for withdrawal symptoms and referred to Cornerstone, however, he left after a couple of days. In 2002, he sought treatment for lower back pain. He had a limp and positive straight leg raise on left side. A lumbar MRI in 2002 shows degenerative disc disease. However, the claimant admits he has had lumbar back pain since he was a child (Exhibit 8F). An MRI in 2004 shows moderate spondyloarthropathy. Straight leg raise testing was negative at a physician visit on February 10, 2006 (Exhibit 1F). An MRI in April 2006 shows disc space narrowing, minimal bulging and moderate stenosis. The claimant underwent back surgery in November 2006 (Exhibit 21F). X-rays in 2007 showed continuing degenerative disc disease with disc bulging. Lumbar spine views in November 2009 state that there are no significant changes in lumbar spine findings since 2007 (Exhibit 20F). Since the surgery, only conservative treatment has been recommended.

Regarding depression and bipolar disorder, the record shows treatment for depression in 2000. He sought treatment after two convictions for growing marijuana and a DWI. He reported lifelong drug abuse. Treatment notes suggest the claimant's mental issues are exacerbated by drug and alcohol abuse. Despite non-compliance with prescribed psychotropic medication, the medical records show the claimant was "stable" regarding mood and psychological status at several points. In April 2006, he received a GAF assessment of 55-60, indicating mere "moderate limitation in social and/or occupational functioning" according to the DSM-IV (Exhibit 13F). Treatment notes show numerous missed mental health care appointments in 2007 (Exhibit 24F).

> Regarding drug abuse, he sought treatment in 2000 and 2003 for drug abuse. He was on methadone in 2006 (Exhibit 13F). According to records from Volunteer Behavioral Health Care, his treatment during that time seems to be within the context of ongoing recovery from polysubstance abuse.
>
> The claimant attended a consultative physical with Dr. D. Kan, MD in September 2006 (Exhibit 8F). The claimant complained of back pain. He stated he injured his back in a motor vehicle accident in 2000. He admits he had lower back pain as a child. He smokes cigarettes. Upon exam, he had limited range of motion in hips, thoracolumbar spine, and cervical spine. He had possible tenderness over lumbosacral paraspinal area. His gait was extremely slow. He was not able to walk on tiptoes or heels. There was a question about his effort. Straight leg raise was positive at 20 degrees bilaterally.
>
> The claimant attended a consultative physical with Dr. C. Spitler, MD on April 14, 2012 (Exhibit 27F). He complained of neck pain and back pain. He stated the pain began about 12 years prior. He had positive straight leg raise on left. Gait is slow and antalgic. He has difficulty heel walking on left, but he can heel-walk on right. He is able to deep knee bend to 65 degrees. He has had restricted range of motion of the left shoulder and instability in left upper extremity. He has some decreased sensations in extremities. The examiner noted, *"I am not 100% that he gave full effort"*. His sensory deficits did not follow any particular dermatomal pattern. He has "mild disability" relating to back and neck pain, but he would be appropriate for any sort of sedentary labor.
>
> The claimant attended a psychological consultative examination with Dr. L. Blazina, PhD in August 2006 (Exhibit 4F). The medical records at the time

indicated the claimant suffers bipolar disorder, cannabis dependence and opioid dependence. The claimant said he could not work due to back pain and bipolar disorder. He *had not taken any pain medication* prior to the examination. He did not report any symptoms that are consistent with history of manic episodes. He has struggled with cocaine, pain pills and other street drugs. He attends a methadone clinic.

The claimant attended a psychological consultative examination with Mr. Herman, SPE in March 2012 (Exhibit 26F). The claimant stated he can drive a vehicle. He was clean-shaven and well groomed. He walked stiffly and bent forward. He reported he lives in a room in a motel owned by his mother. He has been there for six months. Prior to that, he was incarcerated in the county justice center for eleven months for possible drunk and disorderly behavior or gun-related violence. He stated he "got drunk and pulled an AK-47 on the law and tried to get them to shoot me". He was on probation when he was arrested for aggravated stalking. He continues to smoke cigarettes. He stated he *stopped taking his psychotropic medications* six month ago. He stated he has bought illegal drugs in the past. He gets on the internet to find possible dates. He would not endorse having good days and bad days. Treatment notes show he had abused opioid and cannabis in 2009. The record shows at least one episode of drunkenness in 2011.

(Tr. 406-08)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir.

1994)). Even if the record contains substantial evidence that could have supported an opposite conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. E.g., Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483,

490 (6th Cir. 1988).

## C. Plaintiff's Statement of Errors

Plaintiff first argues that the ALJ erred in finding that he did not meet the mental health listings because he did not have marked mental limitations, when in fact the reports from the mental health care professionals of record support the existence of such marked limitations. In support of this argument, plaintiff cites the marked restrictions noted on the Tennessee Clinically Related Group (CRG) forms executed by the professionals with Volunteer Behavioral Health Care Systems, as well as the assessments of his Global Assessment of Functioning (GAF) by those professionals which, according to the GAF scale, are indicative of serious psychological symptoms and/or limitations. As further support for this position, plaintiff cites the low GAF score assigned in 2011 by the most recent consultative psychological examiner, Mr. Jeffrey Scott Herman, SPE.

However, the ALJ dealt with the earlier CRG assessments and GAF scores expressly in her analysis of the opinion evidence, finding that both were undermined by a treating psychiatrist's contemporaneous finding of a GAF score of 55-60, and by the fact that "the record is unclear who completed the CRG forms, whereas a psychiatrist, a medically accepted source, assessed the claimant with the GAF 55-60." (Tr. 410) This Court has held that, in such circumstances where the CRG rating and included GAF score are from an unknown source and are contradicted by other evidence in the mental health record, the ALJ need only give some indication in her discussion that such "other source" opinion evidence was considered and rejected. See Roberts v. Astrue, 2009 WL 1651523, at *6-8 (M.D. Tenn. June 11, 2009) (citing Soc. Sec. Rul. 06-3p, 2006 WL 2329939 (S.S.A. Aug. 9,

9

2006)). Social Security Ruling 06-3p provides, *inter alia*, that the ALJ should make explicit her consideration of "other source" evidence, if not the actual weight such evidence is given, where that evidence could potentially sway the ultimate determination of the claimant's case toward a finding of disability. Soc. Sec. Rul. 06-3p, 2006 WL 2329939, at *6. The Tennessee CRG form would not be expected to contain such opinion evidence, inasmuch as the items on that form are not addressed to the ultimate issue of the patient's work-related abilities and limitations, but are instead a means of ascertaining the patient's mental health treatment classification for purposes of determining his entitlement to state-sponsored healthcare. See Rosen v. Tennessee Comm'r of Health, 2005 WL 3740426, at *18 (M.D. Tenn. Apr. 28, 2005) ("'Most states have a way of identifying persons who are SPMI [(severely and persistently mentally ill)].... Tennessee uses an evaluation tool known as the Clinically Related Group (CRG) assessment to classify individuals into the SPMI designation.... Tennessee has been using the CRG assessment process since before the inception of TennCare to identify the SPMI population.'"). The CRG forms in this case received all the attention they were due. The standard of SSR 06-3p is not a demanding one, Morris v. Comm'r of Soc. Sec., 2012 WL 4953118, at *11 (W.D. Mich. Oct. 17, 2012), and was easily satisfied by the ALJ in the case at bar.

Moreover, GAF scores have long been held to be of limited utility in the disability determination, as such scores are not a reasonable replacement for the more particularized data available in actual treatment notes or reports of examination results, but instead are largely superficial descriptors representing "a clinician's subjective rating of an individual's overall psychological functioning" in terms "understandable by a lay person." See, e.g., Kennedy v. Astrue, 247 Fed. Appx. 761, 766 (6th Cir. Sept. 7, 2007); see also, e.g.,

10

Smith v. Astrue, 565 F.Supp.2d 918, 925 (M.D. Tenn. 2008). Certainly, plaintiff's argument that a GAF score below 50 would be disabling (Docket Entry No. 15 at 11) has been soundly rejected by the courts. Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 877 (6th Cir. 2007); Nelson v. Comm'r of Soc. Sec., 195 F. App'x 462, 471-72 (6th Cir. Aug. 28, 2006); Kornecky v. Comm'r of Soc. Sec., 167 F.App'x 496, 511 (6th Cir. Feb. 9, 2006). Here, the ALJ's response to Mr. Herman's 2011 assessment of plaintiff's low GAF score -- that such score is not reliable because plaintiff had stopped taking his psychotropic medications prior to his examination by Mr. Herman (Tr. 411) -- is an entirely sufficient accounting of the score and other portions of Mr. Herman's assessment that were inconsistent with the moderate mental limitations assigned by the ALJ.

Plaintiff next argues that the ALJ "should have solicited vocational testimony from Dr. Ernest Brewer who served as a Vocational Expert at the second hearing," instead of relying upon the administratively noticed existence in the national economy of 1,600 light and sedentary occupations which plaintiff could be expected to perform. (Docket Entry No. 17 at 12) However, plaintiff does not point to any particular regulation which was flouted in this instance. "[T]he grids are a shortcut that eliminate the need for calling in vocational experts." Hurt v. Sec'y of Health &Human Servs., 816 F.2d 1141, 1142 (6th Cir. 1987). Although a vocational expert was present at plaintiff's video hearing, the ALJ had determined that plaintiff's exertional capacity for the full range of light work was additionally impacted by only a limitation to "simple and low detailed" -- i.e., unskilled[2] --

---

[2]"Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).

11

work requiring less than frequent interaction with the public. The ALJ found that those nonexertional limitations "have little or no effect on the occupational base of unskilled light work" which is reflected in the grids, and which plaintiff was physically capable of performing. (Tr. 412) In such cases where nonexertional limitations are not the focus of the claimant's impairment, and where the claimant is capable of performing a wide range of work at the designated exertional level, the application of the grids to direct a step five finding is proper. Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 537 (6th Cir. 1981).

Plaintiff next argues that the ALJ failed to appreciate the extent of his back impairment, as she characterized that impairment as "degenerative disc disease" despite the film studies which showed stenosis and other spondylitic and arthropathic changes. However, the term "degenerative disc disease" either fairly encompasses or describes the underlying cause of these conditions,[3] and in any event, the ALJ clearly appreciated and made reference to the various film studies and their results in her decision. (Tr. 407) The undersigned finds no error in the broad description of plaintiff's back impairment as "degenerative disc disease."

Plaintiff next contends that the ALJ erred in giving discounted weight to the opinions of all the consultative examiners (Drs. Kan and Spitler, and Mr. Herman), while giving the greatest weight to the opinion of a nonexamining physician, Dr. Misra. While no particular deference is owed to any one-time examiner, the regulations do establish that, "[a]s a general matter, an opinion from a medical source who has examined a claimant is

---

[3] http://www.spine-health.com/conditions/degenerative-disc-disease/what-degenerative-disc-disease

given more weight than that from a source who has not performed an examination...." Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1)). However, the ALJ gave specific reasons for her weighing of these opinions. She stated that less weight was given to the opinions of Drs. Kan and Spitler "because of poor effort noted at the exams." (Tr. 409-10) The ALJ further noted that Dr. Kan described his own opinion as limited due to the fact that he did not have plaintiff's medical records to inform his assessment. (Tr. 409) Moreover, Mr. Herman's assessment was not entirely accepted due to the fact that plaintiff confessed he had stopped taking his medications several months prior to the examination. (Tr. 411) These reasons for the weight assigned the various medical opinions are sufficient, and supported by substantial evidence.

Finally, plaintiff argues that the ALJ should have credited his testimony to back pain which he rated as a 6 or 7 out of 10 and which required him to lie down frequently during the day, in light of his documented back impairment and symptoms, as well as the measures he has taken in seeking relief from his pain. However, the ALJ gave a thorough review of the factors which bore on her assessment of plaintiff's credibility, including his daily activity level, inconsistent statements in the record concerning the source of his back pain and his drug and alcohol abuse, and the numerous references in the record to his continuing activity as a worker on his father's farm. These factors as well as the references to plaintiff's sub-optimal effort on physical examination justify the ALJ's decision to give reduced weight to plaintiff's testimony to the extent of his limitations. Substantial evidence on the record as a whole supports the ALJ's decision that plaintiff remains capable of performing a wide range of light work, and is thus not disabled.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

ENTERED this 6th day of November, 2015.

        s/ John S. Bryant
        JOHN S. BRYANT
        UNITED STATES MAGISTRATE JUDGE